Commonwealth of Pennsylvania, Department of State, Petitioner *v.* Eugene H. Stecher, LeRoy N. Craig, Clayton O. Scott and Theodore J. Charney, Respondents.

46

Argued January 31, 1983, before Judges BLATT, MACPHAIL and DOYLE, sitting as a panel of three.

*Edward D. Frank,* with him *James J. Kutz,* Assistant Counsel, *David F. Phifer,* Chief Counsel and *Jay D. Waldman,* General Counsel, for petitioner.

*Thomas B. Schmidt, III,* with him *Fred Speaker, Pepper, Hamilton & Scheetz,* for respondents.

OPINION BY JUDGE MACPHAIL, May 3, 1983:

Petitioner, the Commonwealth of Pennsylvania, Department of State (Appointing Authority), by way of a consolidated petition for review, appeals four orders of the Civil Service Commission (Commission) which reinstated the Respondents[1] following a furlough.

Respondents Charney, Stecher and Craig were furloughed[2] from their positions with the Bureau of Professional and Occupational Affairs (Bureau) on the basis of lack of funds and lack of work. Respondent Scott, however, was furloughed only on the basis of lack of work. The Appointing Authority has stipulated that the State Board of Medical Education and Licensure (Medical Board), where Scott was employed, is self-funded, rather than funded directly from the Bureau's appropriation. It further stipulated that no lack of funds existed at the Medical Board and therefore lack of funds was not a basis for Scott's furlough.

The lack of funds which caused the furlough of Respondents Charney, Stecher and Craig was caused by overspending by the Bureau in prior years, which re-

---

[1] Theodore J. Charney, Eugene H. Stecher, Leroy N. Craig and Clayton O. Scott were all classified as Administrative Officers II (AOII) within the bureau of Professional and Occupational Affairs until their furlough on August 27, 1980. Charney, Stecher and Craig were each in a supervisory capacity over seven licensing boards. Scott supervised the day-to-day affairs of the State Board of Medical Education and Licensure. During this furlough the Appointing Authority released all of the people holding an AOII position.

[2] Section 3(s) of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.3(s) defines furlough as "the termination of employment because of lack of funds or of work."

sulted in the carry over of an accumulated deficit. Early in July of 1980, the Bureau was aware of its fiscal problems. By memorandum, on July 21, 1980, the Appointing Authority informed the Office of Budget and Administration of its intention to implement a furlough to bring the Bureau within its funding limitations. The Commission found that the memorandum further stated that a furlough could result in serious cuts to services which the Bureau was "perhaps" legally obligated to perform.

On July 25, 1980, the Appointing Authority notified Respondents by letter that they would be furloughed effective August 27, 1980. To effectuate this furlough the Bureau underwent a reorganization of duties. The duties previously performed by Respondents were assigned to the Board's Secretaries, agency counsel, and Bureau Commissioners.

The Respondents appealed[3] the Bureau's furlough action to the Commission. An administrative hearing was held on October 8, 1980. By order of August 28, 1981, the Commission ruled that Respondents be reinstated. The Commission found that the asserted lack of work was totally due to a lack of funds and that this lack of funds was cured by a special supplemental appropriation bill for $378,000[4] (Act 135A). The Secretary of Budget and Administration, after being apprised by the Bureau of its fiscal problems, recommended to the state legislature that such supplemental funds be appropriated "to restore an adequate level of support to the various boards." On September 25, 1980, the Secretary instructed the Bureau that [b]ecause of the uncertainty of legislative action, however, you will have to proceed with the furloughs and the

---

[3] Respondents appealed their furloughs on the basis of Section 951(a) and (b) of the Act, 71 P.S. §§741.951(a), 741.951(b).

[4] Act of October 18, 1980, P.L. 1662 (Act 135A).

cost containment actions you have proposed, *until the additional funds are appropriated.*" (Emphasis added.)

Act 135A appropriated funds to augment the general government appropriation for the Bureau, for fiscal year July 1, 1980-June 30, 1981. Act 135A was signed into law on October 16, 1980, eight days after the Commission's hearing.

The Commission found in the appeals of Charney, Stecher and Craig that although the furlough was justified due to a lack of funds on August 27, 1980, the effective date of the furlough, that Respondents had to be reinstated as of October 16, 1980, the date that Act 135(A), the supplemental appropriation was enacted. The Commission further found that although a reorganization was implemented, the furlough based on a lack of work was also inappropriate. The Commission stated:

Although it is our opinion that the furlough of appellant was, at the time it was taken, justified by a lack of funds cognizable by this Commission, subsequent circumstances have been raised in this matter. Of particular importance is the enactment on October 16, 1980, of a supplemental appropriation for the operation of the Bureau of Professional and Occupational Affairs. We take judicial notice of the fact that the Legislature thereby appropriated the sum of 378,000 dollars to the appointing authority for fiscal year 1980-81. Pa. H.B. 2893 Session of 1980, Act No. 135a. That sum more than exceeded the deficit projected by the appointing authority as justification for its determination of lack of funds. Accordingly, it is apparent that as of the date of enactment there no longer existed a lack of funds justifying the furlough of appellant.

Regarding Respondent Scott, the Commission found once again that the real basis for the furlough was the lack of funds and that it was this lack of funds which necessitated the redistribution of duties. This redistribution was then asserted by the Appointing Authority as a lack of work. The Commission found that there was no lack of work sufficient under these circumstances to justify a furlough. The Commission ordered that Scott be reinstated to his former position with the Medical Board and that he be reimbursed for wages and emoluments since August 27, 1980, less any wages earned and benefits received under the public laws of Pennsylvania as established by a sworn statement.

In its appeal to this Court, the Appointing Authority alleges that the orders of the Commission are erroneous for several reasons. The Appointing Authority contends that the Commission exceeded its authority by taking official notice of the eventual passage of Act 135A and then, after limiting the discussion on the issues of this supplemental appropriation at the hearing, basing the recall of the Respondents on the fact that Act 135A cured the Bureau's lack of funds. We find this contention to be without merit.

First of all, the Commission did not take official notice of the bill's eventual passage, rather it took official notice that Act 135A was *signed* and *enacted* into law on October 16, 1980. Clearly, it was within the Commission's authority to so act. 1 Pa. Code 35.173 provides that official notice "may be taken by the agency head or the presiding officer of such matters as might be judicially noticed by the courts of this Commonwealth."[5] Judicial notice is defined as:

[5] *Cf. Snipas v. Department of Public Welfare,* 46 Pa. Commonwealth Ct. 196, 405 A.2d 1366 (1979) (stating that Civil Service Commission did not act improperly in taking judicial notice of facts that at the time of decision to furlough petitioner, the legislature failed to adopt a budget for the fiscal year in question).

> The act by which a court *in conducting a trial or framing its decision,* will, of its own motion, and without the production of evidence, recognize the existence and truth of certain facts, having a bearing on the controversy at bar. . . . (Emphasis added.)

Black's Law Dictionary 761 (5th ed. 1979).

The Commission acted completely within its province by officially noticing the enactment of a law. At the date of the hearing, October 8, 1980, this appropriation bill had been approved by both houses of the legislature. Eight days later, the Governor signed the bill and it became enacted into law. Ten months later, the Commission wrote its decision in this case and based the recall of the Respondents on the passage of Act 135A.

The Appointing Authority further argues that the Commission improperly raised the issue of recall after the record was closed and that the Commission's orders should be reversed since it was not given a chance to respond.[6] We cannot agree with this contention. At the hearing, Respondents argued that whether or not a lack of funds existed on the date of the furlough and up until October 18, 1980, the date Act 135A was enacted, that subsequent to Act 135A's enactment, there was no longer a lack of funds. They continued to argue that if there was no lack of funds, there was no longer any reason to have Respondents furloughed, and that they should be reinstated as of October 18, 1980. The issue of recall was raised by the Respondents before the Commission. Additionally, we note that recall is always a possibility in furlough cases.

Furthermore, it is the Appointing Authority which has the burden of proving a prima facie case justifying

---

[6] The Commission provided each party with ten days, after the hearing, to file a brief on the merits. The Appointing Authority was given every opportunity to address this issue.

the furlough of employees from the classified service. 4 Pa. Code §105.15; *D'Amato v. Department of General Services,* 58 Pa. Commonwealth Ct. 489, 427 A.2d 1287 (1981). We find that the Appointing Authority failed to meet this burden.

The Commonwealth Court in reviewing a determination of the Commission must accept the Commission's findings when they are supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty. *Hobai v. Allegheny County Health Department,* 38 Pa. Commonwealth Ct. 385, 392 A.2d 1388 (1978). We are also mindful that the Commission, not this Court, is the ultimate arbiter of the facts. *D'Amato.* Conflicting evidence was presented on the issue of whether a lack of work existed to justify a furlough and the Commission resolved this issue of credibility in favor of the Respondents. Since we have found substantial evidence in the record to support the Commission's findings, we are bound by the Commission's determination that the Appointing Authority did not prove that work was unavailable after the supplemental funds were in hand. Record testimony shows that the activities of the regulatory Boards were expanding and that management responsibilities were increasing at the Bureau before the furloughs were instituted. The Commission found that the lack of work resulted from a reorganization of duties implemented due to a lack of funds. Once this lack of funding was remedied, work was once again available for Respondents. The Appointing Authority failed to prove justification for Respondents' furlough on the basis of lack of funds or lack of work.

The Appointing Authority avers that the Commission exceeded its authority by dictating the way an agency should spend its after-acquired funds. It further argues that even if the Commission did not exceed its authority, that there is no reasonable evidence from

which to conclude that the funds were designed for the recall of Respondents. We do not agree. Sufficient record evidence exists to substantiate the fact that at least a portion of that supplemental appropriation was to be used to reverse the furlough of personnel, like the Respondents.

As a result, we must affirm the Commissioner's orders.

### ORDER

It is ordered that the orders of the Civil Service Commission dated August 28, 1981 and numbered 3211, 3164, 3210 and 3163 are hereby affirmed.